## A91A0457. TORGERSEN v. THE STATE.
### (410 SE2d 40)

ANDREWS, Judge.

Howard Roy Torgersen, Jr., was indicted for murder and convicted by a Chatham County jury of involuntary manslaughter in the death of his wife, Diane Torgersen.

At trial, the State's case was founded on the testimony of Dr. Check, the pathologist who performed the autopsy on Ms. Torgersen, who opined that the injury which caused her death resulted from a forceful blow to the abdomen. The defense theory was that Ms. Torgersen's death resulted from a blow she received when she accidentally fell on a bedpost. This theory was supported by the testimony of Torgersen, several of his relatives and friends, and a medical expert witness, as well as by evidence of Ms. Torgersen's alcoholism and physical condition.

Ms. Torgersen's medical condition and the cause of her death were not in dispute. Her death resulted from shock caused by extensive bleeding into the abdominal cavity from a ruptured bladder. At the time of her death, Ms. Torgersen, who had been an alcoholic for a number of years and had been hospitalized twice for alcohol treatment, had a blood alcohol level of .29 grams percent. As a result of chronic alcohol abuse, at the time of her death, Ms. Torgersen had liver cirrhosis, poor muscle tone, and poor blood clotting function, and weighed only 85 pounds.

The State's case established that the tear to Ms. Torgersen's bladder, which resulted in her death, was caused by a blow. Dr. Check testified that the amount of force required to cause this injury was more than would result from the fall of an 85-pound woman. He concluded that it was improbable that a fall caused her injury since a more forceful blow was indicated, though he conceded that the defense theory of how the injury occurred was a "possibility."

The State's theory that Torgersen killed his wife was also supported by the signs of constant abuse on Ms. Torgersen's body, as testified to by Dr. Check. He opined that her condition was that of "someone who's been beaten over a prolonged period of time." At the time of her death, Ms. Torgersen's body was covered with bruises, which were graphically depicted in the photographs shown to the jury. Although many of her bruises were old, Dr. Check testified that among her fresh injuries were a hairline skull fracture, which was accompanied by a four-inch bruise above her left eye, and large bruises on her left shoulder, left hip, and the right side of her abdomen, where she had also suffered a fractured rib. Dr. Check testified that the only object which was consistent with the shape of the bruise on her forehead was the butt of Mr. Torgersen's gun which was found under the Torgersens' bed. A forensic scientist testified that there

were spots of blood on the same revolver. Though no witnesses had ever seen Mr. Torgersen strike his wife, a friend testified that she had seen him drag Ms. Torgersen from a room.

During the State's case, additional evidence was adduced that in addition to the blood on the gun, blood was also found on the carpet in the Torgersens' bedroom and hallway, and on the seat of his truck, and that drops of blood were found on the shoes he was wearing the evening of his wife's death. The detective who executed the search and arrest warrants at the Torgersens' home the afternoon following the death testified that he found Torgersen and a friend, Frances Jones, at his home cleaning the bedroom and washing the linens, and that he was still wearing bloody clothing. The investigating detective also testified that based on his examination of Torgersen's clothing, the blood on his pants was not consistent with his explanation that he soiled his pants carrying the decedent to the car.

In support of the theory that Ms. Torgersen had incurred her fatal injury in a drunken fall, the defense introduced the testimony of several relatives and close friends of Torgersen's, who testified that Ms. Torgersen often drank all day long, frequently to the point of staggering and falling down without making any attempt to brace herself. These witnesses stated that Torgersen always took care of his wife and that they had never seen him strike or threaten his wife.

The defense also presented the testimony of Dr. Van Harn, a trauma surgeon, who viewed the photographs of Ms. Torgersen's body taken at the autopsy. He stated that in his opinion, Ms. Torgersen's injuries were caused when she staggered and fell over the footboard of the couple's bed. He stated that given the amount of alcohol in her blood at the time of her death, it was likely that she could not walk without staggering. He testified that her head injury was not caused by a blow from the gun found at the scene, but instead occurred when she hit her head on the wooden footboard, at which time she ruptured her bladder by falling over the large wooden ball atop the bedpost. In his opinion, it would take "very little" force to rupture the bladder of a person in her physical condition and he found the "generalized blueishness" over her lower abdomen indicated that whatever caused the bladder injury was "bigger than a human fist."

Despite the defense's theory of how Ms. Torgersen died, several inconsistencies in the statements Torgersen had made concerning his wife's death were highlighted at trial. According to the emergency room physician, when Torgersen brought his wife to the hospital at 4:50 a.m. on the date of her death, he stated that she had fallen from bed at 3:00 a.m. and struck her head. In this initial account, Torgersen told the doctor that he had placed her back in bed and then heard her making abnormal sounds which prompted him to take her to the hospital. Torgersen did not explain to the doctor why he had

waited over an hour before bringing his wife to the hospital.

Two friends of the Torgersens' testified that Torgersen had explained that the decedent woke him up with her moaning sounds. The victim's father also testified that Torgersen told him that at 2:30 a.m., his wife's groaning had waked him up and he found her lying on the floor bleeding. Torgersen did not explain how he was able to hear his wife's moaning in his sleep despite his severe hearing loss, which had, by his own testimony, required "three major ear operations." These accounts were somewhat inconsistent with the investigating detective's report that only a few spots of blood were found on the carpet by the bed.

At trial, Torgersen's account of his wife's death varied from the statements he had given earlier. He testified that he was awakened not by his wife's moaning, but by his need to use the bathroom. Torgersen's trial testimony also included the previously untold fact that when he found his injured wife lying by the bed, she told him she needed to use the bathroom, which he helped her to do. Furthermore, his testimony about the location of his wife's body when he found her was inconsistent with the theory that she had fallen.

1. Torgersen claims that he is due a new trial because the evidence presented against him was circumstantial and did not exclude every reasonable hypothesis except that of his guilt. We find no error. "Under *White v. State*, 253 Ga. 106 (317 SE2d 196) (1984), 'circumstantial evidence must exclude only reasonable inferences and hypothes[e]s and it is not necessary that such evidence be devoid of every inference or hypothesis except that of the defendant's guilt.' The evidence was sufficient for a rational trier of fact to have found the appellant guilty of [involuntary manslaughter] beyond a reasonable doubt, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and no new trial was required." *Peppers v. State*, 261 Ga. 338 (404 SE2d 788) (1991); see also *Harris v. State*, 236 Ga. 242, 245 (223 SE2d 643) (1976); *Stephenson v. State*, 191 Ga. App. 877, 878 (383 SE2d 363) (1989).

"Questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law." *Harris*, supra at 245.

There was ample evidence to convict Torgersen, and therefore the trial court's denial of his motion for new trial was proper.

2. In his second enumeration of error, Torgersen contends that the trial court erred in admitting into evidence certain questions of the investigating detective which were contained in the defendant's statement. We find this enumeration of error without merit. See gen-

erally *Watson v. State*, 199 Ga. App. 825 (406 SE2d 509) (1991).

*Judgment affirmed. McMurray, P. J., Banke, P. J., Birdsong, P. J., Carley, Pope, Beasley and Cooper, JJ., concur. Sognier, C. J., dissents.*

SOGNIER, Chief Judge, dissenting.

I respectfully dissent. I conclude the majority has incorrectly applied the principles of review applicable in circumstantial evidence cases when the defendant presents a reasonable hypothesis consistent with innocence.

When the evidence connecting a defendant to the charged crime is circumstantial, to warrant a conviction "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. "The term 'hypothesis' as used in [OCGA § 24-4-6] refers to such reasonable inferences as are ordinarily drawn by ordinary [persons] in the light of their experience in everyday life; the Code section does not mean that the act might by bare possibility have been done by somebody else, but that the State should show to a moral certainty that it was the defendant's act." (Punctuation and citations omitted.) *Atchison v. State*, 181 Ga. App. 351, 352 (352 SE2d 201) (1986). " 'When the circumstantial evidence supports more than one theory, one consistent with guilt and another with innocence, it does not exclude every other reasonable hypothesis except guilt and is not sufficient to prove the defendant's guilt beyond a reasonable doubt.' [Cit.]" *Kreager v. State*, 148 Ga. App. 548 (252 SE2d 1) (1978).

As a general rule, the determination whether the circumstances are sufficient to exclude every reasonable hypothesis except that of the defendant's guilt is made by the jury. *Atchison*, supra; see *Smith v. State*, 56 Ga. App. 384, 387 (192 SE 647) (1937). Nonetheless, our courts have long recognized that "where there appears a hypothesis from the evidence, or from the lack of evidence and the defendant's statement, pointing to the innocence of the accused, and which tested by all human experience is a reasonable one, [an appellate court] may declare it so as a matter of law." *Smith*, supra at 387-388. Accord *Harris v. State*, 236 Ga. 242, 244-245 (1) (223 SE2d 643) (1976) (adopted rule stated in *Smith* for appellate review of evidence in cases based on circumstantial evidence). While we must review the evidence in a light most favorable to the jury verdict, we must not be blinded by that verdict when a reasonable hypothesis of innocence appears from the evidence or the lack thereof. *Solomon v. State*, 195 Ga. App. 684, 688 (394 SE2d 570) (1990).

My thorough review of the transcript persuades me this is such a case. While I agree with the majority that there were some inconsis-

tencies in appellant's explanations of the events that occurred the night of his wife's death, "the burden of proof on the [S]tate was not only to produce evidence 'consistent with the hypothesis of guilt,' but also to produce sufficient evidence to 'exclude every other reasonable hypothesis save that of the guilt of [appellant].' [Cit.]" *Muckle v. State*, 165 Ga. App. 873, 875 (1) (303 SE2d 54) (1983). "[M]ere suspicion is not sufficient to support a conviction." Id. Given that witnesses for both the State and appellant established that because of her chronic abuse of alcohol, Ms. Torgersen had poor muscle tone, bruised easily, and often drank to the point of staggering or falling down, and considering the evidence of her blood alcohol level at the time of her death together with Dr. Van Harn's opinion as to the cause of the fatal injury, I find the State did not dispel the reasonable hypothesis that she ruptured her bladder by staggering into and falling over the footboard of her bed.

" 'Hence, the facts in evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence. [In such circumstances], the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence. (Cit.)' [Cit.]" *Kreager*, supra at 549. "Where the circumstances of a case are equally compatible with guilt or innocence so that it is just as easy to draw one inference over another, the conviction cannot stand. [Cits.]" *Barnett v. State*, 153 Ga. App. 430, 431-432 (2) (265 SE2d 348) (1980). I agree with appellant that his testimony and the testimony of his medical expert witness, Dr. Raymond Van Harn, combined with the evidence concerning his wife's alcoholism and physical condition, established the reasonable hypothesis of accidental death as a consequence of a fall, see *Kreager*, supra, and accordingly, I would reverse.

DECIDED JULY 15, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 — 

*Duffy & Feemster, Dwight T. Feemster, Ronald K. Thompson*, for appellant.

*Spencer Lawton, Jr., District Attorney, Lars T. Granade, Assistant District Attorney*, for appellee.